IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:20-CV-00060-KDB

ODES N. NORTON,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

    Defendant.

**ORDER**

**THIS MATTER** is before the Court on Plaintiff Odes N. Norton's Motion for Summary Judgment (Doc. No. 13) and the Commissioner's Motion for Summary Judgment (Doc. No. 14), as well as the parties' accompanying briefs. Mr. Norton, through counsel, seeks judicial review of an unfavorable administrative decision on his application for Supplemental Social Security Income under Title XVI.

Having carefully reviewed and considered the written arguments, administrative record, and applicable authority, the Court finds that the Commissioner's decision to deny Plaintiff social security benefits is supported by substantial evidence. Accordingly, the Court will **DENY** Plaintiff's Motion for Summary Judgment; **GRANT** Defendant's Motion for Summary Judgment; and **AFFIRM** the Commissioner's decision.

## I.  BACKGROUND

Mr. Norton filed his application for Title XVI supplemental security income on November 9, 2015, alleging disability beginning on the same date. (Tr. 15).[1] His claims were initially denied on

---

[1] Citations to the administrative record filed by the Commissioner are designated as "Tr."

June 3, 2016, and upon reconsideration on February 16, 2017. *Id.* Mr. Norton timely requested a hearing before the ALJ, *id.*, and a hearing was held with Administrative Law Judge Sherman D. Schwartzberg presiding on September 28, 2017. *Id.* Judge Schwartzberg returned an unfavorable decision on December 24, 2018. Mr. Norton requested review of the ALJ's decision with the Appeals Council ("AC"). The AC denied review on December 20, 2019. (Tr. 1-3). The ALJ's decision now stands as the final decision of the Commissioner, and Mr. Norton has requested judicial review in this Court pursuant to 42 U.S.C. § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ used the required five-step sequential evaluation process established by the Social Security Administration to determine if Mr. Norton was disabled during the relevant period.[2] "Disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). At step one, the ALJ found that Mr. Norton had not engaged in substantial gainful activity since the alleged onset date of November 9, 2015. (Tr. 17, Finding 1). Although Mr. Norton is currently working six to seven hours a day, four to five days a week as a fry cook, his reported work activity does not rise to the level of substantial gainful activity. It is, however,

---

[2] The ALJ must determine the following under the five-step sequential evaluation: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite the claimant's limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

2

Case 1:20-cv-00060-KDB   Document 16   Filed 03/08/21   Page 2 of 9

"indicative of the ability to perform substantial gainful activity." (Tr. 17).[3] At step two, the ALJ found that Mr. Norton has the following severe impairments: "osteoarthritis, disorders of shoulders status-post bilateral shoulder surgery; carpal tunnel syndrome, COPD (chronic obstructive pulmonary disease), borderline intellectual functioning, depression, and anxiety." (Tr. 17-18, Finding 3). The ALJ considered Mr. Norton's impairments under the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926) at step three and found that they do not meet or medically equal any listing. (Tr. 19, Finding 3).

At step four, the ALJ found that Mr. Norton has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c) with the following restrictions:

> occasional climbing of ladders, ropes, and scaffolds; frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; frequent overhead reaching bilaterally; frequent handling and fingering bilaterally; and avoiding concentrated exposure to fumes and vibrations. In addition, he would be limited to simple, unskilled work requiring only occasional contact with the public.

(Tr. 20, Finding 4). Based on this RFC and the testimony of the Vocational Expert ("VE"), the ALJ found that Mr. Norton is capable of performing his past relevant work as a fry cook. (Tr. 26, Finding 5). In an alternative finding, the ALJ found at step five that Mr. Norton would be able to perform other jobs existing in significant numbers in the national economy including industrial cleaner, a food service worker, and a meat clerk. (Tr. 26-27). Accordingly, the ALJ determined that Mr. Norton is not disabled under the Social Security Act. (Tr. 28, Finding 6).

---

[3] Beginning with Mr. Norton's explanation of his work activity and continuing throughout the hearing, the hearing transcript reflects a certain hostility by the ALJ towards Mr. Norton. At times, it was difficult for the Court to make sense of the hearing transcript due to excessive interruptions by the ALJ during Mr. Norton's testimony. The Court reminds the ALJ that he is to fully consider the evidence before him fairly and with an open mind in accordance with the Social Security Act and its regulations. *See Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 98 (4th Cir. 2020).

## III. LEGAL STANDARD

District courts review the ALJ's Social Security disability determination pursuant to the standard set out in 42 U.S.C. § 405(g). The decision of the ALJ must be upheld if the ALJ "applied the correct legal standards" and if the "factual findings are supported by substantial evidence." *Bird v. Comm'r of SSA*, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Though the "threshold for such evidentiary sufficiency is not high," it requires that "more than a mere scintilla" of evidence support the ALJ's findings. *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). In undertaking this review, it is not the district court's place to "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). However, "we do not reflexively rubber-stamp an ALJ's findings." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017).

## IV. DISCUSSION

On appeal to this Court, Mr. Norton makes the following assignments of error: (1) the RFC does not properly account for his moderate restriction in concentration, persistence, or pace ("CPP"); (2) the ALJ's decision to give little weight to the examining psychologist's opinion, Dr. Hoogerman, is not adequately articulated or supported by substantial evidence; and (3) the ALJ failed to determine whether his Somatoform Disorder was a severe impairment at step two.

> A. <u>The ALJ accounted for Mr. Norton's ability to stay on task despite a finding that Mr. Norton has moderate limitations in his ability to concentrate, persist, or maintain pace.</u>

The ALJ restricted Mr. Norton to "simple, unskilled work requiring only occasional contact with the public." (Tr. 20). Mr. Norton argues that the ALJ failed to account for his moderate limitation in CPP in the RFC or adequately explain why the moderate limitation would not restrict

4

Mr. Norton further. The Commissioner disagrees and summarizes the ALJ's decision and the evidence to show that the ALJ properly addressed the moderate limitation in CPP in the RFC.

Mr. Norton relies on the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), to support his claim. *Mascio* explains, "Remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* at 636. For instance, if the ALJ finds a moderate limitation in claimant's CPP, the ALJ must include some limitation on a claimant's ability to stay on task. *Id.* at 638. A limitation to simple, routine tasks, or unskilled work is generally insufficient to account for a claimant's CPP limitation and must be accompanied by some limitation in the RFC to account for a moderate limitation in CPP, such as non-production or non-assembly line pace limitations.

*Mascio* does not, however, create a *per se* rule requiring automatic remand when an ALJ finds a moderate limitation in CPP but fails to provide a limitation in the RFC. *Shinaberry*, 952 F.3d at 121 ("But we did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC."). Rather, "an 'ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." *Id.* Thus, the ALJ must simply explain why further limitations in the RFC are not warranted to satisfy its duty under *Mascio*. That explanation, of course, must be supported by substantial evidence.

Here, the ALJ's restriction to simple, unskilled work is supported by substantial evidence. While the ALJ determined that Mr. Norton has a moderate CPP limitation, the ALJ specifically mitigated Mr. Norton's allegations of CPP difficulties by pointing to his daily living activities and examination records. The ALJ noted that Mr. Norton is able to drive, prepare simple meals, and

5

watch television. (Tr. 20). Additionally, the ALJ noted that "the record fails to show any mention of distractibility." *Id.* Later in his decision, the ALJ specifically concluded that Mr. Norton had the ability to stay on task by agreeing with State Agency psychological consultant Dr. Keith Noles's opinion. Dr. Noles opined that Mr. Norton is able to remember simple tasks and maintain concentration well enough to complete simple tasks in a position that does not require substantial interaction with the public. (Tr. 25; 138). The ALJ's reliance on the opinion of the state agency medical consultant that Mr. Norton could complete simple tasks even with moderate limitations in CPP satisfies the explanation necessary to support the RFC limitations. *See, e.g., Del Vecchio v. Colvin*, No. 1:43cv116, 2015 WL 5023857, at *5 (W.D.N.C. Aug. 25, 2015); *Geisler v. Commissioner*, No. SAG-14-2857, 2015 WL 4485459, at *5 (D. Md. July 21, 2015).

Other examination evidence in the record also supports this conclusion. For example, Mr. Norton was found to have "normal level of consciousness, orientation, judgement and insight, memory, mood and affect, language, fund of knowledge and *capacity for sustained mental activity*." (Tr. 955) (emphasis added).[4] Furthermore, as noted throughout the ALJ's decision, Mr. Norton's current job working four days a week as a fry cook indicates that he is able to perform simple, unskilled work without further limitations. The Court therefore finds that substantial evidence supports the ALJ's RFC determination.

B. <u>The ALJ's assignment of little weight to Dr. Hoogerman's opinion is not reversible error.</u>

Mr. Norton's second assignment of error is that the ALJ's decision to give little weight to examining psychologist, Dr. Hoogerman, is not adequately articulated or supported by substantial

---

[4] Although the determination of whether a claimant can work is an issue reserved for the Commissioner, Mr. Norton's primary care provider opined that Mr. Norton could work at some capacity but "seems unwilling to consider options we have discussed." (Tr. 858).

6

evidence. Dr. Hoogerman was contracted by the government to give input on Mr. Norton's mental functioning. In discussing Dr. Hoogerman's opinion, the ALJ stated:

> Little weight has been given to the opinion of Dr. Hoogerman, as it is not well supported by treatment records and appears to rely quite heavily upon the claimant's subjective report of symptoms and limitations, and is an overestimate of his restrictions. He has not required ongoing mental health treatment or psychotropic medications for his alleged mental impairments. While he may have some difficulties with concentration and social interaction, he should be able to perform simple unskilled tasks which require no more than occasional public contact.

(Tr. 25). Specifically, Mr. Norton argues the ALJ's rationale for discounting Dr. Hoogerman's opinion is unsound in two ways: (1) the lack of treatment records gave rise to the need for a consultative exam by Dr. Hoogerman, thus the lack of treatment records cannot logically be used to discredit the exam; and (2) treatment is not a requirement of a mental health condition that leads to work restriction.

"An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies, or has not given good reason for the weight afforded to a particular opinion." *Koonce v. Apfel*, 166 F.3d 1209, at *2 (4th Cir. 1999) (table) (citations omitted). A physician's opinion is afforded significantly less weight if it is not supported by clinical evidence or if it is inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(3), (4).

Substantial evidence supports the ALJ's determination to give Dr. Hoogerman's opinion that Mr. Norton is unable to maintain attention to perform simple tasks little weight. First, as recognized by Mr. Norton, Dr. Hoogerman's opinion conflicts with Dr. Noles's opinion. Second, the ALJ explained his reasoning for giving the opinion little weight. In part, the ALJ discounted Dr. Hoogerman's opinion because it "appears to rely quite heavily upon the claimant's subjective report of symptoms and limitations." (Tr. 25). A review of Dr. Hoogerman's opinion shows that

7

much of the information Dr. Hoogerman based his opinion on was provided by Mr. Norton himself. (Tr. 961). "The Fourth Circuit has held that an ALJ may give the medical opinion of a treating physician little weight if the opinion is based on the subjective complaints of the patient without sufficient evidence to substantiate their claims." *Owen v. Colvin*, No. 1:15-cv-115, 2016 WL 4373702, at *7 (W.D.N.C. Aug. 15, 2016) (citing *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ explained throughout his opinion why the record does not support Mr. Norton's statements concerning the intensity, persistence, and limiting effect of his alleged impairments, including pointing to the lack of mental health treatment or medication, Mr. Norton's ability to still work four days a week, and other daily activities. *See* (Tr. 24).

C. The ALJ did not commit reversible error by failing to specifically discuss Mr. Norton's Somatoform Disorder at step two.

Mr. Norton's final assignment of error is that the ALJ failed to determine whether his Somatoform Disorder is a severe impairment at step two. The claimant bears the burden to make the requisite showing that any medically determinable impairments limit his RFC. *Lewis v. Berryhill*, 858 F.3d 858, 861-62 (4th Cir. 2017); *see also* 20 C.F.R. §§404.1512(c) & 416.912(c); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); *Plummer v. Astrue*, No. 5:11-cv-06-RLV-DSC, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("The claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC."), *adopted*, 2012 WL 1858844 (May 22, 2102), *aff'd*, 487 F. App'x 795 (4th Cir. Nov. 6, 2012).

The only mention of a somatic disorder in the record is from Dr. Hoogerman, and his opinion (as discussed above) was discredited by the ALJ, Dr. Noles, and other medical records. The ALJ was clearly aware of the diagnosis since he acknowledged it in his opinion (Tr. 24),

8

nevertheless he found it did not represent a severe impairment. Mr. Norton testified at the hearing that he was currently working four days a week as a fry cook for 6.5 to 7 hours a day. His employment began after his examination by Dr. Hoogerman, but the fact that Mr. Norton was able to perform such physical and mental work tasks even after Dr. Hoogerman's examination discounts the validity of a somatic diagnosis and/or its accompanying alleged severity.

## V.  ORDER

While the Court does not reach any conclusion as to how it would rule on Mr. Norton's claim on a d*e novo* review, a reasonable mind would find that the evidence is adequate to support the ALJ's decision. The ALJ's decision, therefore, is hereby **AFFIRMED**; Plaintiff's Motion for Summary Judgment (Doc. No. 13) is **DENIED**; and the Commissioner's Motion for Summary Judgment (Doc. No. 14) is **GRANTED**.

**SO ORDERED.**

Signed: March 8, 2021

Kenneth D. Bell
United States District Judge